UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ASHLEY R. LOGAN-WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:13-CV-1119-JAR |
| ) | |
| CAROLYN COLVIN, ) | |
| ACTING COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Ashley Logan-Wilson's ("Plaintiff") application for child's insurance benefits under Title II of the Act, 42 U.S.C. §§401, *et seq.*, and application for supplemental security income under Title XVI of the Act, 42 U.S.C. §§1391, *et seq.* (Tr. 110-22.) Plaintiff filed a claim of disability based upon her learning disability and depression.

**I.   Background**

On May 11, 2011, Plaintiff completed her application for child's insurance and SSI benefits. (Tr. 110-22.) The Social Security Administration ("SSA") denied Plaintiff's application for benefits and she filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). The SSA granted Plaintiff's request and a hearing was held on December 8, 2011. (Tr. 20.) Subsequent to the hearing, Plaintiff amended her onset date of disability to April 27, 2011. (Tr. 132-133.) The ALJ issued a written decision on March 6, 2012, upholding the

denial of benefits. (Tr. 20-30.) On April 26, 2013, the Appeals Council of the SSA denied Plaintiff's request for review. (Tr. 1-4.) The decision of the ALJ thus stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000). Plaintiff filed this appeal on June 13, 2013. (ECF No. 1.) The Commissioner filed an Answer. (ECF No. 9.) Plaintiff filed a Brief in Support of her Complaint. (ECF No. 13). The Commissioner filed a Brief in Support of the Answer. (ECF No. 18.) Plaintiff filed a Reply Brief in support of her Complaint. (ECF No. 19.)

## II. Decision of the ALJ

The ALJ determined that Plaintiff had the following severe impairments: obesity and learning disability in reading and reading comprehension. (Tr. 22-23.) The ALJ discerned that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23-25.) The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). The ALJ also determined that Plaintiff has the ability to occasionally lift and/or carry up to 10 pounds; the claimant also has the ability to stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; the claimant's ability to push and/or pull is unlimited, other than as shown for lift and/or carry; from a medical standpoint, Plaintiff has the ability to understand, remember, and carry out at least simple instructions and non-detailed tasks. (Tr. 25-28.) The ALJ noted that Plaintiff has no past relevant work, has at least a high school education, and is able to communicate in English. (Tr. 28.) The ALJ concluded that jobs exist in significant numbers in the national economy that the claimant can perform, citing 20 CFR 404.1569, 404.1569(a), 404.969, and 416.969(a). (Tr. 28.) The ALJ stated that Plaintiff could perform

jobs such as housekeeping and production assembler. (Tr. 29.) In conclusion, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, from April 27, 2011, the amended onset date, through the date of the decision. (Tr. 29.)

Plaintiff appeals, contending that the ALJ erred in failing to include a pace limitation in the RFC and because the RFC finding is not supported by substantial evidence. In addition, Plaintiff states that the ALJ erred in failing to consider Plaintiff's working memory IQ of 69 and failing to find that Plaintiff met the listing of 12.05(c). (ECF No. 13). The Commissioner contends that the ALJ's decision is supported by substantial evidence on the record as a whole.

### III. Administrative Record

The following is a summary of relevant evidence before the ALJ.

#### A. Hearing Testimony

##### 1. Plaintiff's Testimony

Plaintiff testified as follows. Plaintiff is a high school graduate. (Tr. 36.) Plaintiff attended special education classes in school and had an individualized educational program (IEP), but was in regular classes about eighty percent of the time. (Tr. 36-37.) During school, Plaintiff had difficulty with reading and remembering what she read. (Tr. 37.) She took algebra in high school. (Tr. 37.) Plaintiff has never been employed. (Tr. 38.) She has a driver's license but does not drive. (Tr. 38.) Plaintiff's height is 5 foot, 8 inches and her weight is 238 pounds. (Tr. 38.) Plaintiff has seen "doctors and therapists" for her emotional and sad feelings. (Tr. 39.) Dr. Syed Mumtaz treats Plaintiff for her depression and difficulty sleeping. (Tr. 39-40.)

Plaintiff stated that she cooperated with the testing of the psychologist, Dr. Michael Armour, who was retained by the SSA. (Tr. 40.)

##### 2. Vocational Expert Delores Gonzales

The ALJ gave the following hypothetical to Vocational Expert Delores Gonzales: a hypothetical claimant age 18 on the alleged onset date with 12 years of education, no past relevant work, who can perform a full range of light work and is able to understand, remember, and carry out at least simple instructions and non-detailed tasks. Ms. Gonzales stated that such a person could perform work as a housekeeper, which is light unskilled work, and as a production assembler, which is light unskilled work. (Tr. 42.)

In a second hypothetical, Plaintiff's attorney added the additional restrictions of moderate impairments in ability to maintain concentration and attention for extended periods, moderate impairments in the ability to perform activities within a schedule, maintain regular attendance, moderate impairments in the ability to complete a normal workday and workweek without interruptions from psychologically base symptoms, moderate impairments in the ability to perform at a consistent pace without an unreasonable number of and length of rest periods. Plaintiff's attorney stated that such a person would be off tasks 20 percent of the time. (Tr. 42-43.) The ALJ objected and struck part of the hypothetical as improper because the attorney used generalized moderate designations that were not vocationally relevant. (Tr. 43.) However, the ALJ allowed the part of the hypothetical where counsel defined how long Plaintiff would be off task as appropriate and allowed the vocational expert to respond. (Id.) The vocational expert said such a person could not maintain competitive employment. (Id.)

## B. Medical Records

The Court has reviewed all of Plaintiff's medical records, but Plaintiff's relevant medical records are summarized as follows:

Plaintiff has undergone three mental health evaluations. On July 9, 2011, Plaintiff was seen by Michael T. Armour, Ph.D. for a psychological evaluation pursuant to a referral from the

4

Office of Disability Determinations. (Tr. 325-31.) Dr. Armour stated that Plaintiff was passively uncooperative with the evaluation, and that the current evaluation in the examiner's opinion is an underestimation of her current level of functioning. On the Wechsler Adult Intelligence Scale-IV, Plaintiff obtained a verbal comprehension score of 61, a perceptual reasoning score of 65, a working memory score of 66, a processing speed index score of 71, and a full scale IQ score of 59. Dr. Armour diagnosed Plaintiff with reading disorder, major depressive disorder, query psychotic disorder, and minor mental retardation. Dr. Armour assigned Plaintiff with a GAF score of 40-45.[1] Dr. Armour determined that Plaintiff suffers moderate impairment in her ability to understand and remember instructions; at least moderate impairment in her ability to sustain concentration and persistence in tasks; and moderate to severe impairment in her ability to interact socially and adapt to her environment.

On July 27, 2011, Aine Kresheck performed a psychiatric review of Plaintiff's case (Tr. 335-49.) Dr. Kresheck determined that Plaintiff suffered from a reading and learning disability. Dr. Kresheck found no indication of any severe psychological symptoms in her IEP. Dr. Kresheck noted that Plaintiff needed extra time for task completion, but Dr. Kresheck did not believe that the results of Dr. Armour's one time psychiatric evaluation were consistent with the totality of evidence in the file and Dr. Kresheck gave Dr. Armour's evaluation minimal weight.

---

[1] A GAF score between 31 and 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoid friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV 32.

A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV 32.

5

(Tr. 345.) Dr. Kresheck felt that Plaintiff showed age appropriate adaptive functioning and childhood IQ functioning in the low average range. (Id.)

On or around January 11, 2012, Plaintiff appeared for a psychiatric evaluation with Karen Hampton, Ph.D. (Tr. 368-73.) Dr. Hampton gave Plaintiff the WAIS-IV test and found Plaintiff to have a verbal comprehension score of 74, perceptual reasoning score of 75, working memory score of 69, processing speed of 84, and full scale IQ of 71. Dr. Hampton determined that Plaintiff is able to understand and recall simple instructions, but would be moderately impaired in ability to understand and follow through with complex directions; Plaintiff's concentration is moderately impaired, and pace is mildly slow compared to other young adults; her ability to adapt to social situations and work-life settings is very limited, and impacted by both her psychiatric symptoms not being adequately treated, and by her lack of experience with work-like settings; and Plaintiff is not capable of managing funds independently in her own best interest.

Plaintiff also had limited mental health treatment. Plaintiff was seen by Florissant Psychological services from June 2-June 20, 2011 (Tr. 350-58) and by Dr. Syed Mumtaz on September 9, 2011 and October 4, 2011 (Tr. 356-58.) Plaintiff was also seen periodically by her pediatrician from September 7, 2005 through February 11, 2009. (Tr. 359-67.)

### IV. Legal Standard

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.

20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities ... ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work.[2] 20 C.F.R. §§ 416.920(e), 404.1520(e). At this step, the burden rests with the claimant to establish his RFC. Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008); see also Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004). RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f). If it is found that the claimant can still perform past

---

[2] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." Mueller v. Astrue, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

7

relevant work, the claimant will not be found to be disabled. Id.; 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step 5.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. Id.; see also 20 C.F.R. § 416.920(g). At this step, the Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." Goff, 421 F.3d at 790; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id.; see also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

This court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. See Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002); see also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. Clark v.

8

Heckler, 733 F.2d 65, 68 (8th Cir. 1984). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. Krogmeier, 294 F.3d at 1022.

## V. Discussion

Plaintiff asserts two errors on appeal. First, Plaintiff asserts that the ALJ erred in failing to include a pace limitation in the RFC and because the RFC finding is not supported by substantial evidence. Second, Plaintiff claims that the ALJ failed to consider Plaintiff's working memory IQ of 69 pursuant to Listing 12.05(C). See 12.05(C)(which lists an intellectual disability as "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional or significant work-related limitation of function").

### A. Residual Functional Capacity

The ALJ found that "[w]ith regard to concentration, persistence, or pace, [Plaintiff] has moderate difficulties[.]" (Tr. 24). The ALJ gave "significant weight" to the determinations of Dr. Kresheck who found Plaintiff to be moderately limited in the following: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended period; the ability to perform

9

activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to respond appropriately to changes in the work setting. (Tr. 27, 347-49.) The ALJ gave significant weight to Dr. Hampton who found that Plaintiff's concentration was moderately impaired and that her pace was mildly slow compared to other young adults. (Tr. 23-24, 27, 373.) As previously noted, Dr. Hampton also found Plaintiff's IQ results to be 69 for working memory and 71 for her full scale IQ. (Tr. 372-73). The ALJ, however, gave no weight to Dr. Armour's opinions because the test results he obtained were an "underestimation" because Plaintiff was uncooperative with the examination. (Tr. 23-24, 27.)

Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence because he did not consider Plaintiff's pace difficulties when determining her RFC. (ECF No. 13 at 9-10). Plaintiff argues that the ALJ's finding of a moderate pace restriction required a "detailed explanation and inclusion in the RFC finding." (Id. at 10.) Plaintiff argues that the restriction that she can perform "simple tasks" is insufficient because it does not account for her ability to perform such tasks over a normal workday and workweek on an ongoing basis. (Id. (citing Tr. 347.))

In response, the Commissioner states that the ALJ "accounted for Plaintiff's moderate limitations in pace by restricting [her] to simple, non-detailed work." (ECF No. 18 at 10). The Commissioner notes that the ALJ gave significant weight to Dr. Kresheck who indicated that Plaintiff would be moderately limited in her ability to maintain attention and concentration for extended period, perform activities within a schedule, be punctual within customary tolerances,

complete a normal workday and workweek without interruption from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (ECF No. 18 at 9 (citing Tr. 347-48)). The Commissioner points out, however, that Dr. Kresheck also found that, "based on the totality of the evidence," Plaintiff retained "the ability to understand, remember and complete at least 1-2 step instructions." (ECF No. 18 at 9 (citing Tr. 349)). The Commissioner claims that this restriction is properly reflected in the ALJ's RFC assessment that Plaintiff "had the ability to understand, remember, and carry out at least simple instructions and non-detailed tasks." (ECF No. 18 at 9-10 (citing Tr. 9-10)).

The Court holds that, based upon the totality of the evidence, the ALJ did not properly account for Plaintiff's pace difficulties in the RFC. The ALJ admittedly gave significant weight to the opinion of Dr. Kresheck who opined that Plaintiff was moderately limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. The Commissioner provides no legal support for the proposition that the Plaintiff's restriction to simple, non-detailed tasks accommodates Plaintiff's pace limitation. As noted by Plaintiff, the two jobs that the ALJ and the vocational expert identified as available and limited to "simple instructions and non-detailed tasks" were housekeeper (DOT 323.687-014) and production assembler (DOT 706.687-010), but these occupations require adherence to "set procedures, sequence, or pace," according to the U.S. Department of Labor's Selected Characteristics of Occupation. (ECF No. 19 at 4). While the tasks themselves may be simple and rote, the pace in which Plaintiff is to accomplish them is not accommodated by limitation. See Newton v. Chater, 92 F.3d 688 (8th Cir. 1996) (limiting claimant to simple work was insufficient to capture concrete consequences of claimant's deficiencies in concentration, persistence or pace); Bourgoyn v. Barnhart, No. Civ. 01–1377 JRT/FLN, 2002 WL 31185883, at *4 (D. Minn. Sept.

11

30, 2002) (remanding because hypothetical question did not contain limitation based on deficiencies in concentration, persistence or pace); Pritchett v. Astrue, No. C09–2026, at *13 (N.D. Iowa Feb. 10, 2010) (ALJ failed to set forth claimant's limitations based on concentration and persistence); Rapp v. Colvin, 12-CV-2743 PJS/TNL, 2014 WL 1017958 (D. Minn. Mar. 17, 2014)(remanding because the ALJ failed to include in his mental RFC opinion any limitation on the period of time that claimant could maintain attention and concentration without requiring a break). On remand, the ALJ is directed to re-evaluate the RFC with respect to Plaintiff's pace limitation.

## B.    Listing 12.05(C)

The ALJ stated that the requirements of 12.05(C) were "not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function." (Tr. 24.) The ALJ maintained that he gave "little weight to Dr. Armour's opinion and significant weight to Dr. Hampton's opinion. Dr. Hampton assessed the claimant with a verbal IQ of 74 and a full scale IQ of 71, and therefore, the claimant does not have a score between 60 and 70, as required by paragraph C." (Id.) Listing 12.00(C)(6)(c) instructs that the "lowest of [the IQs is to be used] in conjunction with 12.05." Therefore, Plaintiff claims that she meets Listing 12.05(C) and the ALJ's failure to evaluate Plaintiff's 69 working memory IQ score is error and renders his findings and conclusions unsupported by substantial evidence (ECF No. 13 at 11-12).

In response, the Commissioner acknowledges that Plaintiff has a working memory of 69, as well as a separate impairment that imposes an additional and significant work-related limitation. (ECF No. 18 at 6; Listing 12.05(C)). Plaintiff also suffers from obesity and is limited

12

to light work based upon her obesity. (ECF No. 18 at 6; Tr. 22, 25.) The Commissioner, however, claims that Plaintiff has not demonstrated that she has deficits in adaptive functioning consistent with mental retardation, as required for Listing 12.05(C). In support of this claim, the Commissioner relies on observations by Dr. Hampton, who believed that Plaintiff was functioning at the level for borderline intellectual functioning, not mental retardation or mild mental retardation. (ECF No. 18 at 7; Tr. 374.)

The Court will remand this case for the ALJ to analyze Plaintiff's case in light of Listing 12.05(C). The Commissioner has acknowledged that Plaintiff has a working memory IQ score of 69 and that she has a separate impairment that imposes an additional and significant work-related limitation, *i.e.*, Plaintiff's obesity. The Commissioner now argues that Plaintiff has not shown the required "deficits in adaptive functioning." The ALJ's opinion, however, does not address whether or not Plaintiff demonstrated the "deficits in adaptive functioning;" the ALJ simply stated that Plaintiff did not meet the Listing of 12.05(C) based upon the erroneous finding of the lowest IQ score of 71, instead of 69. The Court will not consider the Commissioner's new proposed finding that Plaintiff did not meet the required deficits in adaptive functioning. See HealthEast Bethesda Lutheran Hosp. & Rehab. Ctr. v. Shalala, 164 F.3d 415, 418 (8th Cir. 1998)("a reviewing court may not uphold an agency decision based on reasons not articulated by the agency itself in its decision"). The Commissioner cannot provide a rationalization on appeal for the ALJ's decision that was not provided by the ALJ. See Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962) ("The courts may not accept appellate counsel's *post hoc* rationalizations for agency [orders]"). Therefore, the Court cannot rely on the rationale that Plaintiff did not prove "deficits in adaptive functioning" in order to uphold the ALJ's decision.

13

The Court finds that the ALJ's determination was not supported by substantial evidence and remands this case to the ALJ to perform an analysis of Listing 12.05(C) regarding Plaintiff.

**VI.     Conclusion**

Based on the foregoing, the Court finds that the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. Upon remand, the ALJ should re-evaluate the RFC with respect to Plaintiff's pace limitation. In addition, the ALJ should perform an analysis of Listing 12.05(C) regarding Plaintiff.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the ALJ to re-evaluate the RFC with respect to Plaintiff's pace limitation and to perform an analysis of Listing 12.05(C) regarding Plaintiff in accordance with this Memorandum and Order. A separate Judgment will accompany this Order.

A separate written judgment will be entered on this date in favor of Plaintiff and reversing and remanding this case for further proceedings pursuant to sentence four of 42 U.S.C. §405(g).

Dated this 19th day of September, 2014.

*/s/ John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE